UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M.A. Mortenson Company,

       Petitioner,

v.                                                                 Civ. No. 06-2182 (JNE/SRN)
                                                                 ORDER

Gem Mechanical Services, Inc., f/k/a
Gem Plumbing & Heating Co., Inc.,

       Respondent.

---

James J. Hartnett, IV, Esq., Faegre & Benson LLP, appeared for Petitioner M.A. Mortenson Company.

David D. Hammagren, Esq., Hammagren & Meyer, P.A., appeared for Respondent Gem Mechanical Services, Inc., f/k/a Gem Plumbing & Heating Co., Inc.

---

      This dispute arises out of three subcontracts made between M.A. Mortenson Company (Mortenson) and North East Mechanical Corp. (North East). Although not a signatory to the subcontracts, Gem Mechanical Services, Inc. (Gem) undertook to complete North East's work under the agreements. The case is before the Court on Mortenson's Motion to Compel Arbitration against Gem. For the reasons set forth below, the Court grants Mortenson's motion.

## I.    BACKGROUND

      In 2003, Mortenson, a general contractor, entered into several separate contracts with the United States Department of the Navy to perform repairs and alterations to three buildings at the Newport Naval Station in Newport, Rhode Island. Pursuant to the Miller Act, 40 U.S.C. §§ 3131-3134 (2000 & Supp. III 2003), Mortenson was required to provide a payment bond for the protection of all persons carrying out the work called for in the contracts.

Mortenson subsequently entered into three separate subcontracts with North East for certain plumbing, heating, and air conditioning work related to its general contracts with the Navy. Each subcontract contains identical language binding the parties to the subcontract to arbitrate "any dispute" in Minneapolis, Minnesota:

> If the Contract Documents do not provide for Arbitration and if Mortenson, in its sole discretion, elects to demand Arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under this Subcontract, including breach thereof, shall be decided by Arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association, unless the parties mutually agree otherwise. Arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

North East had difficulties performing its work under the subcontracts. At some point after North East began its work, Mortenson declared North East to be in default. With the approval of both Mortenson and North East, Gem then undertook the performance of North East's remaining work under the subcontracts. Mortenson and Gem now dispute whether Gem fully completed the tasks required by the subcontracts.

On January 18, 2006, Gem brought an action under the Miller Act in the United States District Court for the District of Rhode Island (Rhode Island Action) alleging several claims, including breach of contract against Mortenson in connection with the subcontracts that Gem took over from North East. According to Gem, Mortenson failed to pay Gem the balance due after all the work provided for under the subcontracts had been completed.

On March 17, 2006, Mortenson filed a demand for arbitration with the American Arbitration Association (AAA) against Gem, North East, and National Grange Mutual Insurance Company, which served as surety for North East. Mortenson's demand seeks a determination that the sums due to Gem, if any, were payable by North East and National Grange.

On May 26, 2006, the AAA determined that it did not have authority to continue the administration of the claims against Gem absent a court order compelling the arbitration of the case before the AAA. One week later, on June 2, 2006, Mortenson filed this petition to compel arbitration.

## II.   DISCUSSION

Mortenson seeks to compel arbitration against Gem in Minneapolis, Minnesota, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2000). There is a strong federal policy favoring arbitration and all doubts are to be resolved in favor of arbitration. *See Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 373 (8th Cir. 1983). The two issues to be determined on a petition to compel arbitration are: (1) whether there is an agreement to arbitrate; and (2) whether the agreement to arbitrate has been breached. *See id.*

Mortenson maintains that Gem is bound to arbitrate even though it did not formally execute the subcontracts because Gem is currently attempting to enforce its rights under those same subcontracts in the Rhode Island Action. Mortenson bases its argument on the doctrine of equitable estoppel. Gem counters that the FAA requires the existence of a written agreement to arbitrate. As a nonsignatory to the subcontracts, Gem contends that it could not have consented to arbitration. Furthermore, Gem suggests that because it never agreed to the arbitration clause, the Court has no personal jurisdiction over Gem. The Court first addresses Gem's jurisdictional challenge.

**A.   Jurisdiction**

Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of a

> controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. The Eighth Circuit Court of Appeals has stated that this section of the FAA "confers jurisdiction on federal courts over actions to compel arbitration only to the extent that the court would otherwise have jurisdiction." *Dominum Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 725 (8th Cir. 2001). The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332. Gem disputes, however, whether the Court has personal jurisdiction over Gem.

It is well established that a party consents to personal jurisdiction by entering into a contract that contains a valid arbitration clause designating a particular forum for arbitration. *See Dominum*, 248 F.3d at 725-26 ("Personal jurisdiction was not lacking because appellants had consented to personal jurisdiction by the agreement to arbitrate in Minnesota. . . . Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Gem would construe these cases to mean that personal jurisdiction exists only where there is an express agreement between the parties. But if Gem is estopped from denying its arbitration obligations under the subcontracts, then it follows that Gem is also estopped from asserting a lack of personal jurisdiction based on those subcontracts. *See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999) ("There is no good reason to read the equitable theory of estoppel to allow the defense of 'no personal jurisdiction'

4

while barring the defense of 'no duty to arbitrate.'"). Accordingly, a determination concerning personal jurisdiction turns on the issue of equitable estoppel.

**B.     Equitable estoppel**

The doctrine of equitable estoppel precludes a party from enjoying the rights and benefits under a contract while at the same time avoiding its burdens and obligations. *Intergen v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). In some circumstances, this doctrine extends even to nonsignatories to a contract. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000); *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778-79 (2d Cir. 1995); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981). A nonsignatory is estopped from denying its obligation to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause. *Thompson-CSF*, 64 F.3d at 778-79 (cited with approval in *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005)).

In its lawsuit pending before the United States District Court for the District of Rhode Island, Gem has sued Mortenson for breach of the same subcontracts containing the arbitration clause it now seeks to avoid. In the Rhode Island Action, Gem alleges:

> 5.      On or about July 13, 2003, North East Mechanical entered into a contract with Mortenson wherein North East Mechanical agreed to install plumbing, heating and air-conditioning in a number of separate buildings for the United States Navy . . . .
>
> 6.      On or about November 1, 2004, Gem, with the permission of North East Mechanical and North East's surety and Mortenson, took over the North East Mechanical contract with Mortenson.
>
> 7.      As of the date of this complaint the work is complete, but Mortenson has, in breach of its contract, failed and neglected to pay Gem its balance due, which is now due and payable.

Gem's admission that it "took over the North East Mechanical contract with Mortenson" combined with Gem's claim for breach of contract clearly demonstrates that Gem seeks a direct benefit from the North East–Mortenson subcontracts.[1]  Gem alleges that it took over the subcontracts and is seeking payment for its work under the terms of the subcontracts, while at the same time it attempts to shirk the obligation to arbitrate any dispute arising under the subcontracts.  The result Gem seeks would be inequitable.

In an effort to avoid a finding that it is estopped from denying the validity of the arbitration agreement, Gem contends that it has an independent basis, completely outside of the subcontracts, for its Rhode Island Action.  By casting its claims in the Rhode Island Action as arising under the Miller Act, Gem asserts that it has removed those allegations regarding the subcontracts from the purview of any estoppel analysis.  In support of its position, Gem cites to *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157 (4th Cir. 2004).

*R.J. Griffin* is readily distinguishable from the case before the Court.  In *R.J. Griffin*, a South Carolina homeowners association discovered defects in its condominium building and sued the general contractor in state court for negligence and breach of the implied warranty of good workmanship.  The general contractor then moved to compel arbitration under clauses in the general construction contract and the master deed.  The Fourth Circuit denied the motion to compel arbitration, noting that "[t]he homeowners association is not a party to the general contract, nor does it seek a direct benefit from the contract in asserting its claims." *Id.* at 159.

---

[1]  At oral argument on this motion, counsel for Gem noted that Paragraphs 5, 6, and 7 of its Rhode Island Action are directed toward a separate defendant and raised the possibility that Gem's breach of contract claim against Mortenson might not be based upon the North East–Mortenson subcontracts.  The Court finds this argument unpersuasive given the fact that no other contracts are referenced in the Rhode Island Action and because later counts in the complaint directed specifically toward Mortenson incorporate paragraphs 5, 6, and 7 by reference and "with the same force and effect as though fully set forth [t]herein."

Unlike the homeowners association in *R.J. Griffin*, Gem is seeking a direct benefit from the subcontracts in asserting its claims in the Rhode Island Action. As such, Gem's reliance on *R.J. Griffin* is misplaced.

It is of little consequence that Gem brought the Rhode Island Action under the Miller Act. No matter the vehicle through which Gem attempts to pursue its claims, the fact remains that the breach of contract alleged by Gem is necessarily grounded in the North East–Mortenson subcontracts. It would be unjust to allow Gem to avail itself of the beneficial terms of the subcontracts while at the same time avoiding the arbitration clause. As recognized in *R.J. Griffin*, "[e]quitable estoppel operates to prevent one party from holding another to the terms of an agreement while simultaneously avoiding the same agreement's arbitration clause." *Id.* at 165. Accordingly, Gem is equitably estopped from denying the agreement to arbitrate found in the subcontracts. Moreover, because Gem is equitably bound to the arbitration agreement, and that arbitration agreement designates Minneapolis, Minnesota as the location for the arbitration proceedings, the Court concludes that it has personal jurisdiction over Gem.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Mortenson's Motion for an Order Compelling Arbitration [Docket No. 3] is GRANTED.

2. Gem shall proceed to arbitration of the disputes identified in Mortenson's Demand for Arbitration. In accordance with the arbitration agreement, the arbitration hearings shall be held in Minneapolis, Minnesota.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 14, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge